Alan GOLDSTEIN, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of the Department of Health and Human Services, Defendant.

No. 80 Civ. 5170.

United States District Court, S. D. New York.

July 16, 1981.

Kresky, Sinawski & Davis, for plaintiff by Harry S. Kresky, New York City.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., for defendant by Asst. U. S. Atty. Harvey J. Wolkoff, New York City.

SOFAER, District Judge:

Plaintiff Alan Goldstein commenced this action pursuant to section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of a final determination of the Secretary of Health, Education and Welfare (now Health and Human Services) that plaintiff was not entitled to disability benefits and that he must repay benefits he had previously received. Both plaintiff and the Secretary have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Proce-

dure. Because the Secretary's decision was predicated on an erroneous interpretation and misapplication of the Act, the case is remanded to the Secretary for a determination based on proper legal standards.

On October 24, 1975, plaintiff, a dentist, filed an application for disability insurance benefits. He claimed that he had been unable to work since May 2, 1975 because he had Hodgkins disease. At about the same time, plaintiff commenced part-time work in a dental clinic. Plaintiff claims that he called a local Social Security Office and was told by an employee that he could return to work on a trial basis without sacrificing his disability benefits. Plaintiff continued to work part-time at dental clinics until he opened a private practice in April 1978.

On November 28, 1975, plaintiff's application for disability benefits was accepted by the Bureau of Disability Insurance of the Social Security Administration ("SSA"). Plaintiff and his family received $12,630.60 in benefits before the SSA determined, in late 1977, that plaintiff was not entitled to further benefits and had to repay all benefits that he had previously received. This termination was based on a finding that, because plaintiff had returned to work in October 1975, he had never been disabled "for a sufficient period of time to qualify for benefit payments under the law." Transcript of SSA Record at 83 [hereinafter cited as "Tr. (page)"].

On November 21, 1979, following a lengthy series of administrative proceedings, an Administrative Law Judge ("ALJ") affirmed the termination of benefits and the order that plaintiff repay all past benefits. The ALJ noted that section 223(d)(1) of the Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). The ALJ reasoned that plaintiff's return to work at the dental clinic constituted a return to

"substantial gainful activity" within twelve months of the onset of the alleged disability, and that plaintiff therefore could not be considered ever to have been under a disability. This determination was predicated on a finding that plaintiff's part-time earnings exceeded those set forth in the Social Security Act regulations as demonstrating a capacity to engage in substantial gainful activity. 20 C.F.R. § 404.1574 (1981). The ALJ also determined that plaintiff was not "without fault" and therefore was not, under the statute and regulations, entitled to a waiver of repayment of improperly received benefits. 42 U.S.C. § 404(b); 20 C.F.R. § 404.507.

■ The ALJ's determination was based, in part, upon an erroneous premise. First, the ALJ failed to apply the proper legal standard in determining whether plaintiff's return to part-time work could be considered a period of trial work within the meaning of the Act. Section 222(c) permits a disabled individual to engage in trial work beginning in the month in which he becomes eligible to receive disability insurance benefits, and concluding either nine months thereafter or when the disability ends (whichever is earlier). 42 U.S.C. § 422(c). The Act and regulations, however, provide that, for purposes of determining whether an individual's disability has terminated, the Secretary may not consider services rendered during a period of trial work. 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a). The ALJ properly stated that "only an individual entitled to disability insurance benefits may be given the benefits of a period of trial work." Tr. 27. But the ALJ erred in concluding that, because plaintiff returned to work within twelve months of the onset of the alleged disability, he was never entitled to disability insurance benefits and thus never eligible for a trial-work period. *Id.*

■ The Act defines disability as an impairment "which has lasted *or can be expected to last* for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1) (emphasis added). The statute thus contemplates that a person can be

declared to be disabled on the basis of the *expectation* of a lengthy period of impairment, even before the twelve month period has elapsed. *Kendrick v. Califano*, 460 F.Supp. 561, 567 (E.D.Va.1978); *McMillen v. Califano*, 443 F.Supp. 1362, 1367 (N.D.N.Y. 1978). Once a person becomes eligible for disability-insurance benefits—*i. e.*, five months after the onset of the disability, 42 U.S.C. § 423—he may commence a trial-work period. *Id.* § 422(c). Under the ALJ's reasoning, however, a person could never safely commence trial work, because the Secretary could subsequently view such work as demonstrating that the recipient had never been disabled. This result would contravene the general rule that the Social Security Act be considered a "remedial statute to be broadly construed and liberally applied." *Gold v. Secretary of Health, Education & Welfare*, 463 F.2d 38, 41 (2d Cir. 1972) (quoting *Haberman v. Finch*, 418 F.2d 664, 667 (2d Cir. 1969)). Moreover, this approach would undermine the purpose of section 222(c)(1) of the Act, 42 U.S.C. § 422(c)(1), to "encourage return to work by eliminating the threat that the return will terminate benefits." *Reynolds v. Secretary of Health, Education & Welfare*, Unempl. Ins. Rep. (CCH) ¶ 17,250, at 2096 (S.D.N.Y. 1979).

■ Even if plaintiff's part-time work were not deemed to constitute trial work within the meaning of section 222(c), 42 U.S.C. § 422(c), the ALJ erred in holding that the fact that plaintiff's earnings exceeded the amounts set forth in the regulations conclusively demonstrated that he had engaged in substantial and gainful activity. Earnings in excess of the specified amounts do not preclude a finding of disability, but merely create a rebuttable presumption of substantial and gainful activity. *Simms v. Harris*, Unempl. Ins. Rep. (CCH) ¶ 17,234 (D.C.Cir.1980); *Swafford v. Harris*, Unempl. Ins. Rep. (CCH) ¶ 17,334 (D.Tenn. 1980). The ALJ must also consider the nature of the work performed, the adequacy of performance, any special employment conditions, and the amount of time spent working. 20 C.F.R. § 404.1573; *Russel v. Department of Health & Human Services*,

Unempl. Ins. Rep. (CCH) ¶ 17,371 (S.D.N.Y. 1980). The last factor is especially important with respect to a professional, who can earn high hourly wages relative to the average wage-earner.

This case must therefore be remanded. The Secretary must decide whether plaintiff was eligible to receive disability insurance benefits—and thus was eligible to begin trial work—at the time he commenced part-time work at the dental clinic. In order to make this determination, the Secretary must first decide whether plaintiff, at the time of the alleged onset of the disability on May 2, 1975, was suffering from an impairment that could be expected to last for at least twelve months. If such disability existed, then the plaintiff became eligible for a period of trial work on October 2, 1975, five months after the disability began. *McMillen v. Califano, supra*, 443 F.Supp. at 1367.

■ Defendant's contention that plaintiff was required to wait until November 1, 1975 before commencing trial work must be rejected. This claim is based on the statutory language that provides that a person becomes eligible for disability insurance benefits beginning with the first month after the five month waiting period required by the statute. 42 U.S.C. § 423(c). Defendant reads this language as requiring a claimant to wait until the beginning of a new calendar month before starting trial work. This interpretation is contrary to the remedial purposes of the Act, *Gold v. Secretary of Health, Education & Welfare, supra*, and is against the weight of authority on this issue, *see, e. g., Otworth v. Finch*, 435 F.2d 542, 543 (6th Cir. 1970); *McMillen v. Califano, supra*, 443 F.Supp. at 1367.

The Secretary may, however, consider whether plaintiff's application for benefits was filed before he commenced part-time employment. The regulations provide that a trial-work period "cannot begin before the month in which you file your application for benefits." 20 C.F.R. § 404.1592(e). Without such a rule, the Secretary would be unable to monitor trial work so as to ensure

that the rehabilitative purposes of the Act were promoted, *Sigmon v. Califano*, 617 F.2d 41 (4th Cir. 1980), and would be hindered in reducing the occurrence of fraudulent claims.

█ The courts that have applied this regulation have confronted situations in which the trial work began in a calendar month prior to the month in which the application was filed. *Sigmon v. Califano, supra; McMillen v. Califano, supra*, 443 F.Supp. at 1367 n.5; *Sanborn v. Weinberger*, 383 F.Supp. 859, 869–70 (D.Del.1974). Here, by contrast, the application for benefits apparently was filed in the same month in which the plaintiff went back to work. Plaintiff filed the application for benefits on October 24, 1975. The ALJ found that "the claimant returned to his former employment as a dentist in October, 1975." Tr. 29. This conclusion is fairly supported by the record, particularly by the introduction of earnings statements showing that plaintiff earned $400 from the dental clinic in October 1975. Plaintiff's statement at his hearing that he was paid $50 twice a week, suggests that plaintiff returned to work early in October. If that is true, then some of the work occurred prior to plaintiff's filing of the application.

█ The language of the regulation indicates that a period of trial work can begin at any time during a month in which an application is eventually filed. But this Court declines to decide that issue without the benefit of defendant's conclusions on the particular facts of this case and its expertise as to the application of 20 C.F.R. § 404.1592(e). Any work undertaken by plaintiff that was not properly part of a trial-work period may be taken into consideration by the Secretary in determining whether plaintiff was engaged in substantial and gainful activity during the period of alleged disability. But in resolving this issue, the Secretary must consider the other relevant factors outlined above.

If the Secretary determines that plaintiff was never disabled, then plaintiff may have to repay the benefits that he previously received. The ALJ properly applied section 204(b) of the Act, which provides that "[i]n any case in which more than the correct amount of payment has been made, there shall be no ... recovery by the United States from ... any person who is without fault if such ... recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b). Plaintiff contends that he was without fault, because he was told by an SSA employee that he could work at the dental clinic without jeopardizing his right to receive benefits.

The regulations require that, in determining whether an overpaid individual is at fault, the SSA "will consider all pertinent circumstances, including his age, intelligence, education, and physical and mental condition." 20 C.F.R. § 404.507. The regulations further provide that fault existed if the incorrect payment resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Id.*

█ The ALJ's conclusion that plaintiff was not without fault is supported by substantial evidence. Although the ALJ did not specify the precise ground for this decision, it is apparent from his opinion that he based the decision on plaintiff's failure to provide material information. The ALJ found:

When he filed his application herein, the claimant agreed to notify the Social Security Administration if he returned to work. He alleges that he did make a telephone call to report employment. But he also concedes that it was a "quick call" and that all details were not discussed. He made no other effort to advise the Social Security Administration of his earnings for a period in excess of one year.

Tr. 29. All of these findings are fully supported by the evidence in the record, and it is therefore clear that plaintiff did not meet his obligation to keep the SSA informed of changes in his employment status. *Cf. Kendrick v. Califano, supra* (reversing Secretary's finding that claimant was not without fault where there was uncontroverted evidence that claimant, his mother, and a third person, had discussed claimant's return to work with SSA employees); *Michalak v. Weinberger,* 416 F. Supp. 1213 (S.D.Tex.1976). The ALJ's determination that plaintiff was not without fault made it unnecessary to decide whether recovery of the overpayment would defeat the purposes of the Act or would be against equity and good conscience.

On the other hand, the ALJ's conclusion may well have been based in part upon his failure to review the evidence of plaintiff's illness or the actual extent of plaintiff's work. Moreover, neither plaintiff nor the SSA sought to locate the person with whom plaintiff spoke. In light of the need to remand this case for new findings, the ALJ should also review the issue of plaintiff's fault. He should consider whether the entire record, when complete, would warrant reconsideration or modification of the order to repay the entire amount plaintiff received—especially in light of plaintiff's assertion that he has had a relapse and cannot afford to make repayment. The Court will retain jurisdiction of this case and place it on the suspense calendar.

Remanded for reconsideration consistent with this opinion.

SO ORDERED.