**Ida McDONALD, Plaintiff-Appellant,**

**v.**

**Otis BOWEN, Secretary of the Department of Health and Human Services, Defendant-Appellee.**

No. 85-2097.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 1986.

Decided Aug. 29, 1986.

As Amended on Denial of Rehearing May 19, 1987.

Steven J. Heller, Chicago, Ill., for plaintiff-appellant.

Joan L. Lowes, Chicago, Ill., for defendant-appellee.

Before CUDAHY, COFFEY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiff Ida McDonald appeals from an order of the district court affirming the reversal by the Secretary of Health and Human Services (the "Secretary") of the Administrative Law Judge's (the "ALJ's") grant of disability benefits to plaintiff. The district court's decision is vacated and the case is remanded to the Appeals Council.

Plaintiff, a 52-year-old woman with an eleventh grade education, worked, since 1962, as a feeder inserting paper into a machine that binds magazines and catalogs. In 1980, plaintiff began to require hospitalization for back problems. In June 1980, she entered South Shore Hospital complaining of pain in the lumbar and cervical regions and in her right hip. Physical examination revealed impairment of motion of the lumbar spine and painful rotation of the right hip. Plaintiff's condition improved after six days and she was discharged with a diagnosis of polyneuritis, cystitis and sprained lumbosacral spine.

On February 7, 1981, plaintiff was admitted to Jackson Park Hospital complaining of intermittent lower back pain, which was exacerbated by motion and relieved with rest. She was discharged with a diagnosis of acute lumbosacral sprain, polyneuritis and tension headaches. She was hospitalized again six months later complaining of headaches, dizzy spells and a loss of balance. She was diagnosed as suffering from transient positional vestipulopathy, functional dysphagia, irritable colon syndrome, climaterium, osteoarthritis of the cervical spine and cardiomegaly. On March 8, 1982, plaintiff entered Illinois Central Hospital suffering from low back and right leg pain. She was discharged eight days later with a diagnosis of lumbar disc pathology and right sciatica.

Plaintiff stopped working on October 25, 1982 because she was unable to bend as required by her job as a feeder. She reentered Illinois Central Hospital one week later on November 1, 1982 complaining that the heavy lifting at work resulted in low back pain. Her physician noted that the lower back pain radiated to her right thigh and had occurred sporadically for the last one and one-half years. Plaintiff was discharged with a diagnosis of prolapsed nucleus pulposus at the L4–5 vertebrae level, a herniated lumbar disc and right sciatica, and was instructed to rest her back and avoid heavy lifting. Three months later, in January 1983, McDonald entered Rush Presbyterian St. Luke's Hospital complaining of a history of a slipped disc, weakness in her back and right leg and numbness in her right thigh. A myelogram revealed a ventral defect at L4–5 consistent with a herniated nucleus pulposus. A discogram, however, showed a normal disc at L4–5. Surgical injection of medication in the disc spaces at L4–5 and L5–S1 provided some relief from the pain.

Plaintiff's personal physician's report of a March 5, 1983 examination stated that plaintiff continued to suffer from lumbar disc pathology, right sciatica and a herniated disc at L4–5. He further noted that plaintiff's daily activities were restricted by persistent pain. McDonald applied for disability benefits on February 28, 1983.

At a hearing on her application before an ALJ on December 15, 1983, plaintiff testified that she was "in quite a bit of pain," that she took medication to relieve the back pain and that she felt as if her right leg wanted to give out. Raising her hands over her head also caused pain. She had worn a corset since the January 1983 hospitalization.

Plaintiff returned to her job as a feeder on May 16, 1983, apparently because she needed the income. She worked three weeks but then was unable to work for

another six weeks due to back pain. She returned to work but soon was disabled again for approximately two weeks due to back pain. At the time of the December 1983 hearing, plaintiff was back at the bindery working as a feeder earning $9.29 per hour.

The ALJ first considered, under the five step sequential evaluation process,[1] whether plaintiff was working and engaging in substantial gainful activity. The ALJ found that "[e]ven though the claimant is presently working and has engaged in some work activity on a scale modified from her usual past work ... such work has not been substantial gainful work activity pursuant to Regulation Section 404.-1572[2] and is considered part of the nine month trial work period which Regulation Section 404.1592[3] allows." The ALJ then

1. Effective February 1979, the Secretary amended the regulations under the Social Security Act to establish a five-step sequential evaluation process for determining eligibility for disability benefits. 43 Fed.Reg. 55349 (1978) (codified at 20 C.F.R. §§ 404.1520 & 416.920). The regulations provide:

(b) If you are working. If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

(c) You must have a severe impairment. If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience....

(d) When your impairment meets or equals a listed impairment in Appendix 1. If you have an impairment which meets the duration requirement and is listed in Appendix 1, or we determine that the impairment is equal to one of the listed impairments, we will find you disabled without considering your age, education, and work experience.

(e) Your impairment must prevent you from doing past relevant work. If you cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment, we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

(f) Your impairment must prevent you from doing any other work. (1) If you cannot do any work you have done in the past because you have a severe impairment, we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled.

20 C.F.R. 404.1520(b)–(f)(1).

2. 20 C.F.R. § 404.1572 provides:

Substantial gainful activity is work activity that is both substantial and gainful:

(a) *Substantial work activity.* Substantial work activity is work activity that involves doing significant physical or mental activities.

Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity.* Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities.* Generally we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

3. Regulation 404.1592 provides in pertinent part:

(a) *Definition of the trial work period.* The trial work period is a period during which you may test your ability to work and still be considered disabled. It begins and ends as described in paragraph (e) of this section. During this period, you may perform "services" (see paragraph (b) of this section) in as many as 9 months, but these months do not have to be consecutive. We will not consider those services as showing that your disability has ended until you have performed services in at least 9 months. However, after the trial work period has ended we will consider the work you did during the trial work period in determining whether your disability ended at any time after the trial work period.

. . . . .

(e) *When the trial work period begins and ends.* The trial work period begins with the month in which you become entitled to disability insurance cash benefits.... It cannot begin before the month in which you file your application for benefits.... It ends with the close of whichever of the following calendar months is the earlier.

(1) The 9th month (whether or not the months have been consecutive) in which you have performed services; or

(2) The month in which new evidence, other than evidence relating to any work you did during the trial work period, shows that you are not disabled, even though you have not worked a full 9 months. We may find that *your disability has ended at any time during the trial work period if the medical or other*

considered the medical evidence under steps 2 and 3 of the sequential evaluation process and found that McDonald was suffering from a severe impairment listed in Appendix 1, Subpart P, Regulation No. 4. The ALJ concluded that plaintiff had been disabled within the meaning of the Social Security Act since October 25, 1982. Further, plaintiff was entitled to a trial work period of at least nine months from May 16, 1983, the date she first returned to work.[4]

On its own motion, the Appeals Council reviewed the ALJ's decision and found that the ALJ erroneously concluded under step 1 that plaintiff had not engaged in substantial gainful activity for a continuous period of twelve months. Although the Appeals Council noted that the claimant had a severe back impairment commencing October 25, 1982, it found that the impairment had not precluded her from engaging in substantial gainful activity for twelve continuous months as required for a finding of disability. The Council further found that plaintiff had been engaging in substantial gainful activity since September, 1983, when she had returned to work full-time.[5] In reversing the ALJ's decision, the Appeals Council did not consider whether plaintiff was entitled to a trial work period.

Plaintiff sought review in the district court. The district court granted the Secretary's motion for summary judgment,

holding that the Secretary's decision that plaintiff was engaging in substantial gainful activity as of September 1983 was supported by substantial evidence. The court reasoned that "a finding of substantial gainful employment precludes a finding of disability whether a person is involved in a trial work period or not."

To receive benefits under the Social Security Act (the "Act") an individual must be found disabled. 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity due to physical or mental impairments which have lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d) & 1382c; 20 C.F.R. § 404.1505. As noted, the Secretary has established a five-step regulatory scheme to determine whether an individual is disabled under the Act. 20 C.F.R. § 404.1520(b)(f)(1). At the first step, an individual will be deemed "not disabled" if the claimant is working and the work constitutes substantial gainful activity. *Id.* at 404.1520(b).

Despite her return to work on May 16, 1983, plaintiff claims that she was disabled as defined in the Act. According to plaintiff, she was entitled to a trial work period and, therefore, her return to work should not have been considered by the Secretary in determining eligibility for disability ben-

---

evidence shows that you are able to do substantial gainful activity.

4. Specifically, the ALJ made the following findings:
   1. The claimant met the special earnings requirements of the Act on October 25, 1982, the date the claimant stated she became unable to work, and continues to meet them through December, 1986.
   2. The claimant has not engaged in substantial gainful activity since October 25, 1982.
   3. The medical evidence establishes that the claimant has severe herniated nucleus pulposus.
   4. The severity of the claimant's impairment meets the requirements of section 1.05C, Appendix 1, Subpart P, Regulations No. 4 and has precluded her from working for at least 12 continuous months (20 CFR 404.1525).
   5. The claimant has been under a "disability," as defined in the Social Security Act, since October 25, 1982 (20 CFR 404.1520(d)).

5. The Appeals Council reasoned as follows:
   [T]he evidence of record established "that the claimant returned to her regular job as a paper feeder machine operator on May 16, 1983, (Exhibit 10) and worked off and on for a total of 13 weeks until September 1983 when she resumed full-time work. The claimant's monthly earnings from September 1983 on, significantly exceeded the earnings guideline in section 404.1574(b) of $300.00 a month. There is no indication that the claimant was afforded any special consideration or subsidies in the performance of this work. Therefore, the Appeals Council concludes that the claimant was engaging in substantial gainful activity from September 1983 through the date of the administrative law judge's decision...."

efits. The Secretary argues that plaintiff is not entitled to a trial work period because she did not demonstrate an inability to engage in substantial gainful activity for twelve continuous months. According to the Secretary, an individual's impairment and an inability to engage in substantial gainful activity must coexist for twelve continuous months. A finding that plaintiff engaged in substantial gainful activity within the twelve-month period terminates the sequential evaluation process and precludes an award of benefits.

■ A trial work period enables an individual to test his or her ability to return to work. 20 C.F.R. § 404.1592(a). Under the Act, any services rendered by an individual during a trial work period "shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period." 42 U.S.C. § 422(c)(2). In other words, a period of trial work enables an applicant to return to the work environment without affecting her entitlement to disability benefits. A period of trial work "shall begin with the month in which [the claimant] becomes entitled to disability insurance benefits." *Id.* § 422(c)(3). An insured person under the age of sixty-five is entitled to disability benefits if that person has filed an application for benefits and has been under a disability as defined in the Act for a period of five consecutive calendar months. *Id.* §§ 423(a)(1), (c)(2). As noted, the Act defines disability as an impairment "which has lasted or *can be expected to last* for a continuous period of not less than twelve months." *Id.* § 423(d)(1) (emphasis added). Thus, under the Act's definition of disability, one need not actually be impaired for twelve months to be entitled to benefits. An applicant may be entitled to benefits if he or she suffers from an impairment which is expected to last for a minimum of twelve consecutive months. Whether an individual is actually disabled for twelve months as originally anticipated is not controlling with respect to the determination of disability. The Act requires only a prediction that the disability will continue for at least twelve consecutive months after the onset of the disability. The require-

ment is therefore forward-looking and is not to be nullified by hindsight. *Sierakowski v. Weinberger,* 504 F.2d 831, 834–35 (6th Cir.1974). When an individual has been disabled for five consecutive months and suffers from an impairment which can be expected to last for a continuous period of twelve months, that person is entitled to disability benefits. And, even after qualifying for such an entitlement, one may engage in a trial work period. 42 U.S.C. § 422(c)(3).

The legislative history to 42 U.S.C. § 423(d) supports our conclusion that an individual may be declared disabled on the basis of an *expectation* of a twelve month impairment. In discussing the 1965 amendments which modified the provision that disability benefits be paid only if the disability was expected to result in death or to last indefinitely, the Senate Finance Committee stated:

> * * * [T]he committee's bill modifies the House bill to provide for the payment of disability benefits for an insured worker who has been or can be expected to be totally disabled throughout a continuous period of 12 calendar months.... Where a worker has been under a disability which has lasted for less than 12 calendar months, the bill would require only a prediction that the worker's disability will continue for a total of at least 12 calendar months after onset of the disability.
>
> .  .  .  .  .
>
> The committee retains the provision in present law under which payment of disability benefits is first made for the seventh full month of disability. The House bill would have authorized payments beginning with the sixth full month of disability.

S.Rep. No. 404, 89th Cong., 1st Sess. 98–99, *reprinted in* 1965 U.S.Cong. Code & Ad. News 1943, 2039. Moreover, the House Committee Report accompanying the 1972 amendments to the Act stated:

> Your committee's bill would reduce the waiting period for disability insurance benefits by one month. Under present

law, entitlement to disability benefits cannot begin until after a worker has been disabled throughout a waiting period of 6 consecutive full months ... No benefit is payable, however, *unless the disability is expected to last* (or has lasted) *at least 12 consecutive months* or to result in death; *this latter provision would not be changed by your committee's bill.*

H.Rep. No. 92–231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 4989, 5042 (emphasis added). Thus, an individual who suffers from an impairment that is expected to last at least twelve consecutive months is entitled to benefits (as well as to a trial work period) after completing the five month waiting period.

Other courts that have considered the issue of when a claimant is entitled to a trial work period have reached the same conclusion. *See, e.g., Otworth v. Finch,* 435 F.2d 542 (6th Cir.1970); *Stevenson v. Heckler,* 595 F.Supp. 1137 (W.D.Pa.1984); *Martell v. Heckler,* 568 F.Supp. 729 (E.D. Pa.1983); *Goldstein v. Harris,* 517 F.Supp. 1314 (S.D.N.Y.1981); *Campbell v. Califano,* 483 F.Supp. 1306 (E.D.Pa.1980); *McMillen v. Califano,* 443 F.Supp. 1362 (N.D.N.Y.1978). The Secretary's attempt to distinguish these cases is not persuasive.

For example, the Secretary claims that in *Goldstein v. Harris,* 517 F.Supp. 1314 (S.D. N.Y.1981), the Secretary had already determined, before the claimant would have been entitled to a trial work period, that the claimant suffered from an impairment entitling him to benefits. Thus, the Secretary contends that the *Goldstein* court knew that the claimant would be disabled for twelve months when it decided to grant a trial work period. But this is not the basis of the court's decision and the court does not even discuss such a factor. Rather, the Secretary specifically found instead that the claimant had not been disabled for twelve months because he had returned to work during that period. The court in *Goldstein* remanded the case for the Secretary to "decide whether plaintiff, at the time of the alleged onset of the disability ..., was suffering from an impairment that could be expected to last for at least

twelve months" and was therefore entitled to a trial work period. *Id.* at 1317.

Similarly, the Secretary contends that in *McMillen v. Califano,* 443 F.Supp. 1362 (N.D.N.Y.1978), the court refused to rely for the purpose of denying benefits on the fact that the plaintiff had been working. The only reason for this analysis, according to the Secretary, was that other significant evidence tended to show that the plaintiff had an impairment that disabled him for twelve months. But, contrary to the Secretary's assertion, there is no indication that the *McMillen* court relied on other significant evidence to demonstrate a disability. Instead, as in *Goldstein,* the court remanded the case to the Secretary to determine whether the claimant "may have been suffering from a disability that could reasonably have been *expected* to last" for a continuous twelve-month period. *McMillen,* 443 F.Supp. at 1368 (emphasis added). If the claimant was suffering from such a disability, he was entitled to a trial work period. *Id.*

■ In this case, the Secretary concluded that the plaintiff was not disabled within the meaning of the Act because she returned to work less than twelve months after the onset of her disability. The Secretary's approach, although straightforward and certainly easy to administer, is not supported by the Act. The Act attempts to strike a balance between paying benefits to people who are disabled and encouraging them to return to work as soon as physically possible. Thus, a person may return to work after five but before twelve months from the onset of the disability without being penalized. That person, however, must be prepared to show that, at the time she returns to work and thereafter her disability is still expected to last at least twelve continuous months from its alleged onset date; otherwise she will not receive benefits. In this connection, her return to work pursuant to a trial work period is not in itself any evidence that her disability has ended.

Accordingly, we vacate the judgment and remand the case to the Secretary for a

determination whether plaintiff suffered from an impairment, as of October 25, 1982, as the ALJ concluded, that was reasonably expected to last twelve continuous months and whether plaintiff had been disabled for five continuous months prior to her return to work in May 1983. Depending upon the outcome of these inquiries, the Secretary may then also have to decide whether plaintiff was covered by a 9–month trial work period during her return to work between May and September 1983 and continuing thereafter. If plaintiff was eligible for a trial work period, the Secretary still may find under the regulations that plaintiff's "disability has ended at [some] time during the trial work period if the medical or other evidence shows that [plaintiff was] able to do substantial gainful activity." 20 C.F.R. § 404.1592(e)(2). A similar regulation was recently construed in *Rush v. Secretary of Health and Human Services*, 738 F.2d 909, 913–14 (8th Cir.1984), as enabling the Secretary to consider new evidence. The new evidence contemplated in *Rush* is evidence of improvement of a claimant's impairment resulting from medical or vocational therapy and technology, from refinements in the diagnosis of an impairment due to new or improved diagnostic techniques or even from an error in the original diagnosis. Absent any medical or other evidence that demonstrates that plaintiff was able to engage in substantial gainful activity, the Secretary may not deny benefits to an individual enjoying a trial work period on the basis that she had thereby demonstrated an ability to engage in substantial gainful activity.

VACATED AND REMANDED.