**Michael D. DEIHL, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CV 92–5907(T).**

United States District Court, C.D. California.

Sept. 22, 1993.

Edmund Parent, Santa Barbara, CA, for plaintiff.

Terree A. Bowers, Leon W. Weidman, Mark V. Mooney, Asst. U.S. Attys., Los Angeles, CA, for defendant.

## MEMORANDUM OPINION

TASSOPULOS, United States Magistrate Judge.

Plaintiff has filed a Motion for Summary Judgment or Remand seeking reversal or remand of the decision of the Secretary of Health and Human Services denying his applications for disability insurance and Supplemental Security Income (hereinafter "SSI") benefits. Defendant, the Secretary of Health and Human Services, has filed a Cross Motion for Summary Judgment seeking affirmance of her decision denying plaintiff's applications for benefits.

Pursuant to the provisions of 28 U.S.C. § 636(c), the parties filed a Consent to Proceed Before a United States Magistrate on November 17, 1992. Plaintiff filed a Reply Memorandum to Defendant's Cross Motion for Summary Judgment on September 9, 1993.

### STATEMENT OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for disability insurance and SSI benefits on September 14, 1990, alleging disability commencing August 3, 1990 due to deep vein thrombosis in his legs. (Administrative Record, hereinafter "A.R.", pages 61–65). Both applications were denied initially (A.R. 66–69), and upon reconsideration. (A.R. 71–72). Plaintiff requested an administrative hearing (A.R. 73), which was held on February 4, 1992 (A.R. 26–60) before an Administrative Law Judge (hereinafter "ALJ").

The ALJ issued his hearing decision on February 27, 1992. (A.R. 11–22). The ALJ found that the plaintiff was disabled beginning August 3, 1990, with the exception of the need to suspend benefits for the period June 1, 1991 through January 1992 because the plaintiff performed substantial gainful activity during this period. The ALJ found that benefits should resume as of February 1992.

The Social Security Appeals Council determined that it would review the plaintiff's case on its own motion. (A.R. 365–368). In light of the Appeals Council's decision to undertake review, plaintiff's representative requested review of the hearing decision on July 28, 1992. (A.R. 9–10). The Appeals Council issued its decision on August 17, 1992, finding that plaintiff was not disabled or entitled to social security benefits because the twelve month duration requirement had not been met. Accordingly, the ALJ's decision was vacated and the Appeals Council's decision stands as the final decision of the Secretary in plaintiff's case. (A.R. 5–8).

### BACKGROUND

Plaintiff was born on November 20, 1945, and completed his education through two years of college. (A.R. 29–30).

At the administrative hearing, plaintiff motioned to change the onset of disability date to December 1, 1990 because plaintiff had worked before that time. (A.R. 28). Plaintiff requested that the ALJ consider plaintiff's work from December 1, 1990 through April 30, 1991 as an unsuccessful work attempt, and that other work plaintiff performed after the onset date of his disability be considered a trial work period. (A.R. 30–31).

Plaintiff explained to the ALJ that despite his health problems, he worked as a carpenter in July of 1990. (A.R. 37). In October of 1990, plaintiff worked as a program technician for STEPS, a program for recovering drug addicts and alcoholics. (A.R. 37–38). Plaintiff's work was part-time, and he acted as a guardian for drug and alcohol dependent persons. In March of 1991, plaintiff was hospitalized. After his release from the hospital, in June of 1991, the work became full-time work. (A.R. 39). As a full time employee, plaintiff was paid seven dollars an hour for a forty-eight hour work week. When plaintiff worked part-time, he was paid by the hour for hours actually worked. (A.R. 40). Plaintiff worked in the full time position until January of 1992. (A.R. 42).

Harry Coffee, plaintiff's supervisor at STEPS, testified at the administrative hearing. (A.R. 42–52). He explained that he was

a tech supervisor, and that STEPS was a for profit organization which acted as a co-dependency unit for adult and adolescent drug and alcohol addicts. Mr. Coffee further explained that the facility is a ninety bed unit with adults on the first floor and adolescents on the upper floor. A technician, like plaintiff, is expected to walk the halls continuously, and be aware of the activity on the floor. (A.R. 44–45). Mr. Coffee interviewed plaintiff for his job in October of 1990 and was unaware that plaintiff had physical impairments. (A.R. 43). Coffee continued to be unaware of plaintiff's physical impairments until he was hospitalized in March of 1991. (A.R. 45–46). When plaintiff returned from the hospital, Coffee placed him on the graveyard shift as soon as a position became available in June of 1991. He did that to accommodate plaintiff's need to keep off his feet, since the graveyard shift is generally considered an easier shift. (A.R. 48). Coffee also stated that since March of 1991, he has attempted to not schedule plaintiff as many days in a row as he had, as well as scheduling him for work that did not require that he be on his feet. (A.R. 49). Coffee also explained that at the time of the administrative hearing, plaintiff was not terminated from his employment. Rather, plaintiff was using his vacation time. Coffee noted that the doctor who performed the physical required by the job stated that plaintiff should not be on his feet. Coffee stated that if plaintiff returned to work, he would have to discuss plaintiff's condition with his supervisors and the company's insurers. (A.R. 50–52).

Upon questioning by the ALJ, plaintiff stated that he had no intentions of returning to work because his legs caused him great pain. (A.R. 53–54). Coffee added that plaintiff was frequently absent from work due to his poor health. (A.R. 54–55).

## STANDARD OF REVIEW

■ The Secretary's denial of benefits should only be disturbed if it is not supported by proper legal standards or the substantial evidence of record. *Keyes v. Sullivan,* 894 F.2d 1053 (9th Cir.1990). Substantial evidence is more than a mere scintilla but less than a preponderance. *Richardson v. Pe-*

*rales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir.1988). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427. The Court is required to review the record as a whole and consider both adverse and supporting evidence. *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989).

## DISCUSSION

■ This case presents the novel question of whether plaintiff is entitled to a finding that his work after he filed an application for disability benefits was an "unsuccessful work attempt" and a "trial work period". The scope and parameters of both the unsuccessful work attempt and the trial work period are questions of first impression in the Ninth Circuit Court of Appeals.

### A. An Unsuccessful Work Attempt

Under the regulations concerning evaluation guides if the claimant is working, the Secretary states that: "We will generally consider work that you are forced to stop after a short time because of your impairment as an unsuccessful work attempt and your earnings from that work will not show that you are able to do substantial gainful activity." 20 C.F.R. § 404.1574(a)(1) (1993). The Secretary's Social Security Ruling 84–25 states that the unsuccessful work attempt concept was designed as an equitable means of disregarding relatively brief work attempts that do not demonstrate sustained substantial gainful activity. In addition to considering whether work performed while receiving benefits was an unsuccessful work attempt, the guidelines specified in SSR 84–25 are also applicable in initial disability cases. Different guidelines exist for a work effort of three months or less, and a work effort of between three and six months. If a work effort lasts over six months, it cannot be considered an unsuccessful work attempt regardless of the way it ended or was reduced to the non-substantial gainful activity level. *See Nettles v. Sullivan,* 956 F.2d 820,

822–23 (8th Cir.1992) (Although Court did have some sympathy for claimant, her work went over a period of six months, and she had not shown that she could not perform substantial gainful activity for a continuous twelve month period.)

## B. The Trial Work Period

The Secretary defines a trial work period as enabling an individual to test his or her ability to return to work. 20 C.F.R. § 404.-1592(a) (1993).[1] The Secretary further defines the trial work period as beginning with the month in which an individual *becomes entitled* to disability insurance cash benefits, and ending after nine months. The nine month trial work period does not have to be consecutive, and the Secretary may consider the work done during this period to determine whether an individual is still disabled. 20 C.F.R. § 404.1592(e) (1993). However, the Social Security Act, which specifically defines a "period of trial work", provides that "any services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period." 42 U.S.C. § 422(c)(2). Further, "a period of trial work for any individual shall begin with the month in which he becomes *entitled* to disability insurance benefits ...". 42 U.S.C. § 422(c)(3) (emphasis added).

■ In *McDonald v. Bowen*, 818 F.2d 559 (7th Cir.1986), the Seventh Circuit Court of Appeals concluded that an individual who suffers from an impairment that is expected to last at least twelve consecutive months is entitled to benefits, as well as to a trial work period, after completing the five month waiting period. *Id.*, at 564. The Court reached that conclusion based upon its analysis of the Social Security Act and its legislative history which defines disability as an impairment "which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1); *Id.*, at 563. The Act also provides that an insured person under the age of sixty-five is

entitled to disability benefits if that person has filed an application for benefits and has been under a disability for a period of five consecutive calendar months. 42 U.S.C. §§ 423(a)(1), (c)(2). Therefore, the Court concluded that an individual need not be impaired for twelve months to be entitled to benefits. Whether an individual is actually disabled for twelve months is not controlling with respect to a disability determination. Thus, a person who has been disabled for five consecutive months, and suffers from an impairment expected to last twelve months, is entitled to disability benefits and may engage in a trial work period. *McDonald*, 818 F.2d at 563.

At the time of the decision, Ida McDonald was a fifty-two year old woman working as a feeder inserting paper into a machine that binds catalogues and magazines. After numerous hospitalizations for back problems, she stopped working on October 25, 1982, and applied for disability benefits on February 28, 1983. After she applied for benefits, she returned to work as a feeder on May 16, 1983 because she needed the income. She was only able to work for three weeks due to back pain. She stopped working for six weeks and returned to her work, only to be disabled due to back pain for another two weeks. At the time of her administrative hearing before an ALJ, Ms. McDonald was working as a feeder and earning $9.29 per hour. Despite the fact that she had worked after she had applied for benefits, the ALJ found that Ms. McDonald had not been engaging in substantial gainful work, and her work was part of the nine month trial work period allowed by the Secretary's regulations. The ALJ also found that Ms. McDonald had been disabled within the meaning of the Social Security Act since October 25, 1982. On its own motion, as in the instant case, the Appeals Council reviewed the ALJ's decision and found that the ALJ had erroneously concluded that Ms. McDonald had not engaged in substantial gainful activity for a continuous period of twelve months. The Appeals Council found, instead, that Ms. Mc-

---

1. Different rules and standards apply to the recipient of SSI benefits who wishes to try a trial work period. Plaintiff has not raised an issue as to a trial work period for an SSI beneficiary, and, as a result, the Court will not discuss the applicability of such rules to plaintiff's case.

Donald had been engaging in substantial gainful activity since the time she had returned to full-time work in September 1993. Based upon their reasoning and conclusions as discussed above, the Court of Appeals vacated the judgment of the District Court affirming the Secretary, and remanded the case to the Secretary for a determination as to whether Ms. McDonald suffered from an impairment reasonably expected to last twelve consecutive months; and whether she had been disabled for five continuous months prior to her return to work in May 1983. *Id.,* at 565.

The Secretary took the position that the *McDonald* decision was contrary to the Secretary's regulation that required a claimant to have been found disabled and actually receiving benefits in order to be entitled to a trial work period. This conflict resulted in Acquiescence Ruling 88–3(7) which stated that the *McDonald* decision would only be followed in cases in the Seventh Circuit. Since that time, another Circuit Court of Appeals has agreed with the *McDonald* decision, and held that the resulting Acquiescence Ruling was entitled to no deference. *Walker v. Secretary of Health and Human Services,* 943 F.2d 1257, 1259 (10th Cir. 1991).[2] As previously noted, the Ninth Circuit has not addressed the trial work period question.

### C. Applicability to the Plaintiff

Plaintiff has a long history of past relevant work as a carpenter. After numerous hospitalizations throughout the 1980's (A.R. 134–262), plaintiff worked in May of 1990 as a window manufacturer. However, he was laid off after only three weeks because he was too slow. (A.R. 362). He was hospitalized in June of 1990 for two weeks. (A.R. 316). As previously noted, plaintiff testified at the administrative hearing that he worked as a carpenter in July 1990. (A.R. 37). He was hospitalized from August 3 through August 8, 1990. (A.R. 263–314). Plaintiff applied for benefits on September 14, 1990, alleging on onset of disability date of August 3, 1990.[3] Plaintiff worked on a part-time basis beginning on October 11, 1990 out of economic necessity. During October, he worked thirteen (13) days. In November, he worked fourteen (14) days. In December, he also worked fourteen (14) days. In January of 1991, plaintiff worked eight and one half (8½) days. In February, plaintiff worked nineteen and a half (19½) days, and in March, plaintiff worked only nine (9) days. (A.R. 362). Less than six months from the time that plaintiff started working part-time, he was hospitalized from March 15, 1991 through March 30, 1991. (A.R. 263–314). Plaintiff did not start work again until the last two days in April of 1991. Plaintiff worked part-time in May of 1991. In June of 1991, plaintiff's employer accommodated the plaintiff and offered him a full time position on the night shift. Plaintiff worked full time from June 1991 to January 1992 when he could no longer work due to his impairments. At the time of the administrative hearing, plaintiff was not officially terminated from his employment, but was taking his accrued vacation time; not planning to return to work after that time had been exhausted.

At the administrative hearing, plaintiff's representative requested that the ALJ consider plaintiff's work from December 1, 1990 through April 30, 1991 to be an unsuccessful work attempt. (A.R. 30–33). The ALJ found that plaintiff's work from October of 1990 through March of 1991 was an unsuccessful work attempt. (A.R. 15, 17).[4] In his Motion for Summary Judgment, plaintiff notes the ALJ's finding with approval. (Plaintiff's Motion, page 7). The Secretary, in her Opposition to Plaintiff's Motion and Cross Motion for Summary Judgment states

---

**2.** The *Walker* Court, citing *Paxton v. Secretary of HHS,* 856 F.2d 1352, 1356 (9th Cir.1988), found that Social Security Rulings did not have the force and effect of law.

**3.** As previously noted, plaintiff's representative requested that the ALJ change plaintiff's onset date to December 1, 1990 because plaintiff had worked after August of 1990. (A.R. 28). Howev-

er, at the close of the administrative hearing, plaintiff's representative amended the onset date back to August 3, 1990. (A.R. 59).

**4.** The ALJ found that plaintiff was engaging in substantial gainful activity between June 1991 through January 1992. This is the period of time plaintiff claims was a trial work period.

that plaintiff is arguing that his unsuccessful work attempt was from October 11, 1990 through June of 1991. Plaintiff's Reply Memorandum does not address specific dates claimed as an unsuccessful work attempt. The pleadings have indicated that the ALJ's choice of the October of 1990 through March of 1991 date are the appropriate dates for review.

In view of plaintiff's sporadic work, he has established that he worked less than six months. Thus, the section of the Secretary's regulation SSR 84–25 for a work effort between three (3) and six (6) months is applicable. The regulation requires that if a work effort lasted more than 3 months, "it must be ended or have been reduced to the non-SGA level within six months due to the impairment or to the removal of special conditions (see below) related to the impairment that are essential to the further performance of work and:

a. There must have been frequent absences due to the impairment; or

b. The work must have been unsatisfactory due to the impairment; or

c. The work must have been done during a period of temporary remission of the impairment; or

d. The work must have been done under special conditions."

The defendant Secretary argues that the record does not support any of the four conditions noted above. To the contrary, the record does reveal that plaintiff's case is supported by substantial evidence that fulfills the requirements noted above. First, the prelude to the possible four conditions requires either an ending of the unsuccessful work attempt due to the impairment or the removal of special conditions at work. It is true, as defendant has asserted, that plaintiff's supervisor testified that he was not even aware of plaintiff's impairments until his hospitalization in March of 1991. Thus, special conditions were clearly not present. However, plaintiff's unsuccessful work attempt ended with his hospitalization in March of 1991.. Thus, it can be found that the plaintiff's part-time work ended and was reduced to the

non-substantial gainful activity level because of his impairment. Second, the Secretary's ruling requires only the fulfillment of one of the four conditions because of the use of the word "or" rather than "and". As the discussion above reveals, plaintiff's work during this unsuccessful work attempt was sporadic. Thus, it can be found that plaintiff's frequent absences from his work were due to his impairment. There was no evidence in the record that the work as unsatisfactory. In fact, plaintiff's work must have been of such a quality that it prompted his supervisors to make special accommodations for him on the graveyard shift so that he could work without exacerbating his impairment. As to the condition requiring that the work be performed during a remission in the impairment, defendant has argued that the medical evidence does not support that finding. Clearly, the only impairment that would strictly comply with this requirements is a type of cancer or other progressive disease where remissions are clearly defined, and are noted by physicians in their clinical notes. Plaintiff's unsuccessful work attempt occurs between two hospitalizations. Thus, it may logically be found that his venous leg thrombosis was in remission in between these two hospitalizations allowing him to attempt a work effort, although unsuccessful.

The Court concurs with the ALJ's finding and concludes that the period of time that plaintiff worked part-time from October 1990 until March of 1991 should be considered an unsuccessful work attempt.

As to the time between June of 1991 and January of 1992, wherein plaintiff claims that he was in a trial work period, the Court also finds that plaintiff has met the requirements of a trial work period for several reasons. First, the work effort was less than nine (9) months. Second, and following the rule of the *McDonald* decision, plaintiff has established that he has an impairment which has lasted or can be expected to last for a continuous period of not less than twelve (12) months, and that plaintiff has been under a disability for a period of five consecutive months.[5]

---

5. It should be noted that the Court's finding that

the time before the trial work period, when

## D. The Due Process Issue

■ Plaintiff has claimed that his due process rights have been violated because the Secretary's regulations conflict. Defendant has argued that there is no due process violation between the regulations and the Social Security Act. Defendant notes that the concepts of trial work period and an unsuccessful work attempt are distinct.

The Court agrees with defendant on this point. There is no obvious or apparent conflict between the statute and the regulations. Thus, plaintiff has failed to raise a colorable constitutional claim. *See Fiola v. Sullivan*, 922 F.2d 526 (9th Cir.1990) (Secretary's regulation regarding child benefits not so irrational as to violate due process); *Panages v. Bowen*, 871 F.2d 91, 92 (9th Cir.1989) (Challenge to Secretary's decision to not reopen decision not a violation of due process); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202–03 (9th Cir.1990) (Notice of adverse decision found to be inadequate and a violation of procedural due process).

## CONCLUSION

Based upon the foregoing analysis and discussion, the Magistrate Judge concludes that the decision of the Appeals Council was not supported by the proper legal standards nor the substantial evidence of record. Accordingly, the decision of the Secretary is reversed, and the case remanded to the Secretary for payment of all benefits due to the plaintiff. Judgment shall be entered in favor of the plaintiff.

plaintiff worked part-time, was an unsuccessful work attempt, is key to the second finding that the full-time work thereafter was a trial work period. Without a finding that up to six months of his work was an unsuccessful work attempt, plaintiff could not claim that he was disabled for five out of the twelve months required by statute. In other words, without the unsuccessful work attempt, plaintiff could not claim that he fulfilled his waiting period which is a precursor to the ability to obtain benefits.

By following the *McDonald* decision, this Court is clearly endorsing the concept that a trial work period can be accomplished prior to being found entitled to disability benefits. Although the *McDonald* decision does not note the importance of its decision, the decision has given relief to many social security claimants, at least in the Seventh Circuit, who need to work to survive prior to a decision by the Secretary as to their entitlement to benefits, and despite the gravity of their impairments. The Secretary appears to be suggesting that a more "workable" or "practical" solution is required in order to monitor people who try to work before their disability application is administratively adjudicated. Perhaps the best solution would be to concentrate on processing disability applications faster. Thus, many claimants would not have to choose between staying home without funds, thus, staying safely within the Secretary's regulatory scheme, or going to work because of economic necessity but running afoul of the Secretary's regulations. The *McDonald* decision provides at least one way of coping with the problems faced by many claimants.